UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


SUZANNE DUNIGAN,
PLAINTIFF

VS.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,
DEFENDANT

CASE NO. 1:08CV501
(SPIEGEL, J.)
(HOGAN, M.J.)


## REPORT AND RECOMMENDATION

Plaintiff filed her application for Disability Income Benefits and Supplemental Security Income in January, 2005. Her application was denied both initially and upon reconsideration. Plaintiff then requested and obtained a hearing before an Administrative Law Judge (ALJ) in April, 2007 at Cincinnati, Ohio. Plaintiff, who was represented by counsel at the hearing, testified as did her daughter, Theresa Dunigan, and Vocational Expert, (VE), Janice Bending. The ALJ rendered an unfavorable decision in May, 2007, following which Plaintiff processed an appeal to the Appeals Council, which denied review in June, 2008. Plaintiff then timely filed her Complaint with this Court in July, 2008.

## STATEMENTS OF ERROR

Plaintiff asserts that the ALJ erred in three respects. She first asserts that the ALJ erred in determining Plaintiff's residual functional capacity. The second alleged error was the ALJ's failure to consider the sustainability of work. The third was the ALJ's failure to consider all the medical evidence.

## PLAINTIFF'S TESTIMONY AT THE HEARING

Plaintiff testified that she had worked as a cashier, stocker and bagger at Big Lots for the last 10-12 years and that she was terminated from work in December, 2004 for excessive absences due to pain. She is treated at the Jewish Hospital Clinic and sees Dr. Nuthakki. She has no medical insurance and lives with her sister-in-law. Her husband died recently. After her term at Big Lots, Plaintiff attempted work at Ohio Valley First Door as a cashier, but lasted less than two weeks because of absences. Plaintiff testified that she is 5'4" tall and weighs 277 lbs. She has a 6th grade education and reads at the 2nd or 3rd grade level. Plaintiff described her problems as "real bad headaches," blurred vision, numbness in her hands and feet and left hip to low back pain. She testified that she has been diagnosed with arthritis, diabetic neuropathy and a rare bone disease called esinophilic granuloma.

Plaintiff estimated that she could sit for an hour or two on good days and 15-20 minutes on bad days. She can stand for 20-30 minutes on a good day and walk for 1/4 block. She estimated that she could lift 5 lbs. She experiences numbness in both hands, but the right hand is numb most of the day and the left hand about 2-3 times per week. She also experiences numbness in both feet. She frequently falls and cannot bend at the waist without experiencing pain. She has difficulty climbing stairs and her diabetes causes frequent urination. Her daughter does the cooking, cleaning and shopping.

Plaintiff said that she has been depressed since the deaths of her husband and mother-in-law and has been on anti-depressants for approximately 10 years. She suffers from crying spells and mood swings and has entertained thoughts of suicide.

Plaintiff's daughter, Theresa, testified that she does the cooking, cleaning and shopping and helps her mother with dressing and grooming. She described her mother's problems as back pain, numbness in her feet and hands, a tendency to drop things and difficulty remembering things. Theresa's opinion was that her mother could not handle full-time work. (Tr. 470-501).

## THE VOCATIONAL EXPERT AND THE HYPOTHETICAL QUESTION

2

The first hypothetical question asked the VE to assume that Plaintiff could lift, carry, push and pull 20 lbs. occasionally and 10 lbs. frequently. She could stand/walk 6 hours in a workday and sit for 6 hours. Plaintiff could occasionally stoop, crouch, crawl, kneel and climb stairs or ramps, but should not climb ladders, scaffolds, ropes or work around hazards. Plaintiff is limited to routine, repetitive tasks and should have no contact with the general public and only occasional and superficial contact with co-workers. Plaintiff should work in a stable, predictable environment with few changes. The VE opined that Plaintiff could not return to her past relevant work, but could perform the sedentary jobs of protective service worker and bookkeeping and accounting clerk and the light jobs of maid, grounds maintenance worker, courier and messenger. All listed jobs were fairly represented in the national economy.

The second hypothetical, ultimately adopted by the ALJ, asked the VE to assume that Plaintiff could lift, carry, push and pull 10 lbs. occasionally and 5 lbs. frequently, stand and walk for 2 hours in a workday and sit for 8 hours, providing she could stand and stretch every 20-30 minutes. Otherwise, the same limitations apply as stated in the first hypothetical question. The VE responded that Plaintiff could perform the sedentary jobs of surveillance system monitor, bookkeeper, general office clerk and button and notion assembler. All the jobs listed existed in representative numbers in the national economy.

Cross-examination of the VE by Plaintiff's counsel, disclosed that a person would lose her job if she was absent more than one day per month. The VE admitted that numbness in the hands would eliminate bookkeeping, general office clerk and production jobs, but not the job of protective service worker. The VE also testified that employers would tolerate one bathroom break per hour. Finally, the VE admitted that if Dr. Nuthakki's report relative to Plaintiff's absentee rate were accurate, Plaintiff would not be able to sustain competitive employment. (Tr. 501-511).

## THE ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ found that Plaintiff suffered from osteoarthritis of the lumbar spine, obesity, depression, borderline intellectual functioning and a pain disorder. The ALJ found all these

3

impairments to be severe, but none to be of Listing level, either alone or in combination. The ALJ found Plaintiff to have the residual functional capacity as outlined in his second hypothetical question and to be capable of a limited range of sedentary work.

## THE MEDICAL EVIDENCE

X-rays taken in March, 2003 at Jewish Hospital showed "degenerative changes of the lower dorsal spine, a normal right ankle and with reference to the right foot, evidence of a previous osteotomy with internal fixation screws involving the first metatarsal." (Tr. 159-160). X-rays of the right ankle and foot, taken in May, 2003, showed "mild soft tissue swelling" in the ankle and "evidence of previous surgery at the first metatarsal with two orthopaedic screws." (Tr. 161). Srinivas Iyengar, M.D., reported in June, 2003 that Plaintiff had been diagnosed with esinophiligranuloma three years ago, but had no sequelae of the disease. However, she was depressed and was living in a difficult environment. The need was for social support. (Tr. 162). In October, 2003 the Peripheral Vascular Lab at Jewish Hospital reported "no evidence of deep or superficial vein thrombosis in the right lower extremity." (Tr. 163).

In November, 2003, Plaintiff was seen in the Emergency Room at Jewish Hospital for left knee pain, popping and clicking, with minimal swelling. The probable diagnosis was left meniscus tear. Her left knee was wrapped in an Ace bandage and she was given crutches. (Tr. 165-166). Also in November, 2003, films of Plaintiff's left knee showed "mild medial compartment narrowing and condylar spurring." The probable diagnosis was osteoarthritis. (Tr. 167).

X-rays of Plaintiff's lumbar spine in June, 2005 were "unremarkable." (Tr. 192).

A psychological examination was done in January, 2004 by Norman Berg, Ph.D. at Xavier University. She told Dr. Berg that she had been taking Zoloft for approximately 10 years, but had never either been in counseling or hospitalized for emotional problems. Dr. Berg diagnosed her with Depressive Disorder and assigned a GAF of 65. The stressor was her husband's health problems. Plaintiff said that she was seeking disability payments because of her low back and left knee pain. Dr. Berg felt that Plaintiff was of low-average intelligence and

4

mildly depressed because of her and her husband's health problems. Dr. Berg felt that Plaintiff would have no limitations of her ability to understand and follow simple directions and no problems with attention and concentration. She would have no limitations of her ability to relate and interact or to sustain a level of activity. Her ability to cope with stress was mildly limited. (Tr. 200-205).

Guy Melvin, Ph.D., also a clinical psychologist, completed an evaluation of Plaintiff in February, 2004. Dr. Melvin diagnosed Plaintiff with a Depressive Disorder and felt that she had mild limitations in the categories of restriction of activities of daily living, difficulty maintaining social functioning and difficulty maintaining concentration, persistence or pace. (Tr. 208-220).

A third psychological evaluation was done by David Chiappone, Ph.D., in March, 2005. Dr. Chiappone related that Plaintiff's primary complaint was back and right knee pain. Dr. Chiappone diagnosed Plaintiff with a pain disorder, major depression and borderline intellectual functioning. He assigned a GAF of 51. Dr. Chiappone said that Plaintiff had the capacity to understand simple one and two-step job instructions and relate to co-workers and supervisors, but she has a moderately impaired stress tolerance and a moderately to severely impaired ability to carry out and persist over time due to depression and pain. (Tr. 221-225).

A fourth psychological evaluation was done in May, 2005 by Audrey Todd, Ph.D. Dr. Todd's diagnosis was Major Depression, Borderline Intellectual Functioning and a Pain Disorder. Dr. Todd found mild limitation of Plaintiff's ability to perform the activities of daily living and maintain social function, but a moderate restriction of her ability to maintain concentration, persistence or pace. Her stress tolerance was moderately impaired. Robelyn Marlow, Ph.D., agreed. (Tr. 228-245).

Bone imaging studies were done at Jewish Hospital in October, 2006. The results showed "increased activity related to shoulder, knee, ankle and feet, probably degenerative/arthritic in origin." (Tr. 261-262).

Plaintiff was treated by Hollynn Larrabee, M.D., at Jewish Hospital for "SI joint spasm and muscle spasm" in December, 2006 after bending over to remove clothes from a dryer. There was no numbness, tingling or bowel/bladder symptoms. She had a history of low back pain, but had never had physical therapy or surgery. She had a full range of motion in her legs and straight

leg raising was negative. Her gait was normal. Dr. Larrabee recommended muscle relaxants and Percocet. She was put on a lifting restriction. (Tr. 263-266).

In April, 2007, x-rays of Plaintiff's left hip showed "phleboliths in the pelvis" and "postsurgical changes present," but "no osseous destructive lesion" and "no significant degenerative or inflammatory arthropathy." X-rays of the lumbosacral spine showed "hypertrophic degenerative facet arthropathy involving the posterior elements of L4-S1" and "degenerative changes in the lower thoracic and upper lumbar spine to L1." (Tr. 277-279).

In August, 1998, Plaintiff was treated for an ankle sprain after she fell off the running board of a van and twisted her right ankle. Christ Hospital Emergency Room Physicians recommended ice and elevation of the ankle. (Tr. 284-286).

Christ Hospital records show that Plaintiff was treated there for a variety of apparently unrelated problems (abdominal pain, headaches, bronchitis, left forearm pain, toe nail removal, ovarian cyst removal, etc.) but the records refer to the fact that Plaintiff has depression and "eosinophilic granuloma," a bone condition requiring frequent bone scans, for which Plaintiff was noncompliant. The bone condition affects the lungs and the right femoral shaft. (Tr. 287-446).

A Residual Functional Capacity Questionnaire was completed in April, 2007 by Parsanth Nuthakki, M.D. Dr. Nuthakki indicated that he had treated Plaintiff since July, 2006 for "chronic back pain and degenerative lower spine disease." She suffers from "pain on prolonged standing, shooting pain down the back of her legs. Bending forward causes her pain." She suffers from "fatigue" and a "depressed mood." Her pain is "moderate to severe without pain medication." Dr. Nuthakki said that Plaintiff's experience of pain would frequently interfere with the attention and concentration needed to perform even simple work tasks. He found Plaintiff capable of low stress jobs. He said that she could walk 1-2 blocks without rest or severe pain, but that she could sit for more than 2 hours at a time and stand for approximately 1 hour. She could sit for about 4 hours in a workday and stand for about 2 hours in a workday. She would require a job that permits shifting positions at will and the need to take unscheduled breaks at the rate of 15-20 minutes every 1-2 hours. Dr. Nuthakki opined that Plaintiff should never lift 20 lbs, but could rarely lift 10 lbs. and occasionally lift less than 10 lbs. She should rarely stoop and crouch, but

6

could occasionally twist or climb stairs. Her impairments would likely produce good days and bad days and would likely result in absences at the rate of more than 4 days per month.

Dr. Nuthakki rated as "limited but satisfactory" Plaintiff's ability to maintain regular attendance, complete a normal workday without interruptions from psychologically-based symptoms and deal with normal work stress. He rated her functional limitations resulting from her mental impairment as "none to mild" in the three categories of restriction of the ability to perform activities of daily living, difficulty maintaining social functioning and difficulty maintaining concentration, persistence or pace. (Tr. 447-455).

## OPINION

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(i), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual"

7

as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §404.1520(c). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. §404.1521(b). Plaintiff is not required to establish total disability at this level of the evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish

disability within the meaning of the Act. *Gist v. Secretary of H.H.S.*, 736 F.2d 352, 357 (6th Cir.1984). The severity requirement may be employed as an administrative convenience to screen out claims that are totally groundless solely from a medical standpoint. *Higgs v. Bowen*, No. 87-6189, slip op. At 4 (6th Cir. Oct.28, 1988). An impairment will be considered nonsevere only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985)(citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). The Secretary's decision on this issue must be supported by substantial evidence. *Mowery v. Heckler*, 771 F.2d 966 (6th Cir. 1985).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321 (6th Cir. 1978); *Phillips v. Harris*, 488 F. Supp. 1161 (W.D. Va. 1980). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *see Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

The grid is designed for use when the alleged impairment manifests itself through limitations in meeting the strength requirements of jobs. 20 C.F.R. Subpart P, Appendix 2, § 200.00(e). If plaintiff suffers solely from nonexertional impairments, the grid is inapplicable and the Commissioner must rely on other evidence to rebut plaintiff's prima facie case of disability. *Id.*, § 200.00(e)(1). Nonexertional impairments include "certain mental, sensory, [and] skin impairments" as well as "postural and manipulative limitations [and] environmental restrictions." 20 C.F.R. Subpart P, Appendix 2, § 200.00(e). Where a plaintiff suffers from an impairment or a

9

combination of impairments that results in both exertional and nonexertional limitations, the grid is consulted to see if a finding of disability is directed based upon the strength limitations alone. If not, the grid is then used as a framework and the Commissioner examines whether the nonexertional limitations further diminish plaintiff's work capability and preclude any types of jobs. *Id.*, § 200.00(e)(2). If an individual suffers from a nonexertional impairment that restricts performance of a full range of work at the appropriate residual functional capacity level, the Commissioner may use the grid as a framework for a decision, but must rely on other evidence to carry his burden. *Abbott v. Sullivan*, 905 F.2d 918, 926-27 (6th Cir. 1990); *Damron v. Secretary of H.H.S.*, 778 F.2d 279, 282 (6th Cir. 1985); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 528-29 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). The existence of a minor nonexertional impairment is insufficient to preclude use of the grid for directing a decision. Rather, plaintiff must demonstrate that the nonexertional impairment "significantly limits" his ability to do a full range of work at the appropriate exertional level in order to preclude a grid based decision. *Atterberry v. Secretary of H.H.S.*, 871 F.2d 567, 572 (6th Cir. 1989); *Cole v. Secretary of H.H.S.*, 820 F.2d 768, 771-72 (6th Cir. 1987); *Kimbrough v. Secretary of H.H.S.*, 801 F.2d 794, 796 (6th Cir. 1986).

When the grid is not applicable, the Commissioner must make more than a generalized finding that work is available in the national economy; there must be "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform *specific* jobs." *Richardson v. Secretary of H.H.S.*, 735 F.2d 962, 964 (6th Cir. 1984) (per curiam) (emphasis in original); *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). Taking notice of job availability and requirements is disfavored. *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 536-37 n.7, 540 n.9 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). There must be more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *Richardson*, 735 F.2d at 964; *Kirk*, 667 F.2d at 536-37 n.7. The Commissioner is not permitted to equate the existence of certain work with plaintiff's capacity for such work on the basis of the Commissioner's own opinion. This crucial gap is bridged only through specific proof of plaintiff's individual capacity, as well as proof of the requirements of the relevant jobs. *Phillips v. Harris*, 488 F. Supp. 1161 (W.D. Va. 1980)(citing *Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975)). When the grid is inapplicable, the testimony of a vocational expert is required to show the availability of

10

jobs that plaintiff can perform. *Born v. Secretary of H.H.S.*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Varley v. Secretary of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987).

The assumptions contained in an ALJ's hypothetical question to a vocational expert must be supported by some evidence in the record. *Hardaway v. Secretary of H.H.S.*, 823 F.2d 922, 927-28 (6th Cir. 1987). A proper hypothetical question should accurately describe plaintiff "in all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). *See also Varley v. Secretary of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the evidence supports plaintiff's allegations of pain, a response to a hypothetical question that omits any consideration of plaintiff's pain and its effects is of "little if any evidentiary value." *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975). However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of H.H.S.*, 39 F.3d 115, 118 (6th Cir. 1994).

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). *See also Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Jones v. Secretary of H.H.S.*, 945 F.2d 1365, 1369 (6th Cir. 1991). This test, however, "does not require . . . 'objective evidence of the pain itself.'" *Duncan*, 801 F.2d at 853. Where a complaint of pain is not fully supported by objective medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiff's activities, the effect of plaintiff's medications and other treatments for pain, and the recorded observations of pain by plaintiff's physicians. *Felisky*, 35 F.3d at 1039-40.

Where the medical evidence is consistent, and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984). Where, however, the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky*, 35 F.3d at 1039-41.

In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Kirk*, 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036. The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985)(citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

A treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048, 1054 (6th Cir. 1983). A summary by an attending physician made over a period of time need not be accompanied by a description of the specific tests in order to be regarded as credible and substantial. *Cornett v. Califano,* No. C-1-78-433 (S.D. Ohio Feb. 7, 1979) (LEXIS, Genfed library, Dist. file). A physician's statement that plaintiff is disabled is not determinative of the ultimate issue. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d); *Harris v. Heckler*, 756 F.2d 431 (6th Cir. 1985). If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. *Harris*, 756 F.2d at 435. *See also Cohen v. Secretary of H.H.S.*, 964 F.2d 524, 528 (6th Cir. 1992). While the Commissioner may have expertise in some matters, this expertise

12

cannot supplant the medical expert. *Hall v. Celebrezze,* 314 F.2d 686, 690 (6th Cir. 1963); *Lachey v. Secretary of H.H.S.,* 508 F. Supp. 726, 730 (S.D. Ohio 1981).

It is the Commissioner's function to resolve conflicts in the medical evidence and to determine issues of credibility. *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Secretary of H.H.S.,* 823 F.2d 922, 928 (6th Cir. 1987); *King v. Heckler,* 742 F.2d 968, 974 (6th Cir. 1984). The Commissioner's determination must stand if it is supported by substantial evidence regardless of whether the reviewing court would resolve the conflicts in the evidence differently. *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983). *See also Boyle v. Sullivan,* 998 F.2d 342, 347 (6th Cir. 1993); *Tyra v. Secretary of H.H.S.,* 896 F.2d 1024, 1028 (6th Cir. 1990). The Commissioner must state not only the evidence considered which supports the conclusion but must also give some indication of the evidence rejected in order to facilitate meaningful judicial review. *Hurst v. Secretary of H.H.S.,* 753 F.2d 517, 519 (6th Cir. 1985). *See also Shelman v. Heckler,* 821 F.2d 316, 321 (6th Cir. 1987).

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan,* 111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.,* 892 F.2d 1043 (6th Cir. Jan. 2, 1990) (unpublished, available on Westlaw). Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.,* 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher,* 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been

resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher,* 17 F.3d at 176. *See also Abbott v. Sullivan,* 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services,* 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher,* 17 F.3d at 176. *See also Felisky v. Bowen,* 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir. 1985).

Plaintiff's first Statement of Errors is that the ALJ erred in formulating the residual functional capacity assessment by giving disproportionately greater weight to the opinions of paper reviewers, Drs. Melvin and Todd and one-time examiner, Dr. Berg while giving disproportionately lesser weight to the opinions of treating physician, Dr. Nuthakki and one-time examiner, Dr. Chiappone.

Both Dr. Melvin and Dr. Todd are clinical psychologists, who reviewed Plaintiff's medical records in February, 2004 and May, 2005, respectively. Neither examined or treated Plaintiff. Both agree that Plaintiff has a depressive disorder and both agree that Plaintiff's limitation regarding the ability to perform the activities of daily living should be categorized as mild. However, Dr. Todd's opinion was that Plaintiff had moderate, not mild as Dr. Melvin found, restrictions of her ability to attend and concentrate as well as withstand workplace stress. Although Dr. Berg was not a treating source, he did both examine and test Plaintiff in June, 2005. Dr. Berg also agreed that Plaintiff suffers from a depressive disorder, which he classified as "mild." Dr. Berg's opinion relative to Plaintiff's ability to withstand stress was the same as Dr. Melvin's. None of the three clinical psychologists found any marked or serious emotional limitations regarding Plaintiff's ability to work.

Dr. Chiappone, also a clinical psychologist, examined and tested Plaintiff, but, like Dr. Berg, is not a treating source. Dr. Chiappone's opinion, like all of his colleagues who participated in this case, found that Plaintiff had a depressive disorder. Dr. Chiappone felt, as did Dr. Todd, that Plaintiff's ability to tolerate stress was moderately impaired. Dr. Chiappone departed significantly from the others by concluding that Plaintiff's ability to attend and concentrate was moderately to seriously impaired. Dr. Nuthakki does not identify his area of

14

specialty, but we do know that he saw and treated Plaintiff for a two-year period at the Jewish Hospital clinic. Since Dr. Nuthakki diagnosed her low back and leg problems, we feel safe in assuming that his specialty is either orthopaedics or internal medicine and certainly not psychiatry. In any event, Dr. Nuthakki rated Plaintiff's functional limitations resulting from her emotional deficits as "none to mild," putting him in basic agreement with Dr. Melvin, the least restrictive of any of the mental health experts.

Substantial evidence exists that Plaintiff is of low-average or borderline intelligence, but can understand and carry out simple one or two-step job instructions. Both Drs. Berg and Chiappone, who tested Plaintiff, so concluded. There is no disabling mental, as opposed to emotional, impairment, as long as the jobs selected by the VE are within Plaintiff's intellectual capacity to perform, which they are.

The only conclusion one can reach after reviewing the above is that Plaintiff's depression, whether characterized as depressive disorder or major depression is not a disabling emotional impairment and the ALJ's conclusion to that effect is supported by substantial evidence in the record.

There are, however, physical impairments. The record contains evidence that Plaintiff was diagnosed with esinophilic granuloma, a disease which produces bone lesions, as early as 2000. The symptoms are pain, swelling and tenderness near the affected bone. Dr. Iyengar said in June, 2003 that there were no sequelae of the disease. As a result of x-rays, taken in November, 2003, Plaintiff was thought to have osteoarthritis in her left knee as there was "mild medial compartment narrowing and condylar spurring." X-rays of Plaintiff's lumbar spine were "unremarkable" in June, 2005, but in April, 2007, x-rays showed degenerative changes. In December, 2006, Dr. Larrabee said that Plaintiff's gait was normal, that straight leg raising was negative and that Plaintiff had full range of motion in her legs. Dr. Nithakki's conclusion that Plaintiff had chronic back pain and degenerative lower spine disease is fully supported by the medical record.

But social security law focuses more on functional limitations, not diagnoses. Dr. Nithakki's report did not address Plaintiff's ability to frequently lift, but he did say that she could occasionally lift less than 10 lbs. The ALJ's hypothetical was in basic agreement. Dr. Nithakki's

15

opinion was that Plaintiff could sit for 4 hours in a workday and stand for 2 hours, but that she needed to change positions at will. The ALJ's hypothetical assumed plaintiff could sit for 8 hours, but should be given stretch breaks every 20-30 minutes. We have no idea where in the record the ALJ found support for his conclusion that Plaintiff had the residual functional capacity to sit for 8 hours in a workday. The only evidence that we could find on the subject was Dr. Nuthakki's opinion. Thus, the sitting requirement in the ALJ's hypothetical was erroneous.

Dr. Nuthakki said that Plaintiff should rarely stoop and crouch, but could occasionally twist or climb stairs. The ALJ determined that Plaintiff could occasionally stoop, crouch and climb stairs. Again, we find no basis in the record for the departure, but doubt that any of the jobs located by the VE would hinge on the distinction. The remainder of the ALJ's restrictions were based on common sense. For example a 277 lb. woman with low back and left knee instability should not be climbing ladders, scaffolds or ropes, nor should she be working around hazards. The ALJ recognized stress tolerance to be an issue and carefully designed the restrictions in his hypothetical question to minimize the effect of this impairment. We find no error in this regard either.

In summary, we find that this Statement of Error has merit insofar as the sitting limitation, as contained in the ALJ's residual functional capacity assessment, is unsupported by the medical record. We would recommend a remand if this were the only problem. However, it is not.

The second Statement of Errors is that the ALJ failed to consider the sustainability of work, or put another way, the ability to work an 8-hour day on a regular and continuing basis. In support of her argument, Plaintiff points out that her counsel's cross-examination of the VE demonstrated that a person who would miss more than one day per month would be unemployable. That testimony is significant in light of Dr. Nuthakki's opinion that Plaintiff would miss more than 4 days per month because of her impairments. It is also significant that Plaintiff, who has a rather lengthy work history and certainly needs the income productive work would provide, testified that she lost her job at Big Lots because of excessive absences due to pain and inability to move. Although one might question Plaintiff's credibility on the basis that she is the claimant who is attempting to frame her case so as to secure disability payments, Dr.

Nuthakki's opinion relative to Plaintiff's likely absenteeism is unrebutted, largely because the other experts are all in the mental, rather than in the physical health field. We find that Plaintiff's ability to perform sustained work, even at the sedentary level, is not evident from the medical record and that the ALJ's conclusion to the contrary is erroneous.

The third and last Statement of Errors criticized the ALJ, unfairly we believe, for his failure to consider Plaintiff's diabetes and her need to take frequent bathroom breaks. There is evidence in the record that Plaintiff has diabetes and some degree of neuropathy due to diabetes. However, the references to diabetes occur as part of the history Plaintiff provided when she was hospitalized for other conditions. Although Plaintiff believes that blood sugar levels at the high end lead to a desire to urinate, no medical source has so stated. No medical expert has voiced an opinion relative to what functional deficits, if any, Plaintiff has attained because of diabetes, although Plaintiff stated that her doctor told her that the feelings of cold, burning and numbness in the feet to be the result of diabetes. We do not believe this Statement of Errors has any merit.

## CONCLUSION

This case is somewhat difficult to follow. Although Plaintiff complained during her testimony before the Court that the reasons why she cannot work are physical, to wit: headaches, blurry vision, numbness in her hands and feet, lower back and hip pain, she was never sent to a physician for a physical work-up. Instead, multiple experts in the mental health field voiced opinions on Plaintiff's depression and her borderline or low-average IQ and the probable work-related consequences of her mental/emotional status. We are convinced that neither her depression nor her IQ are significant impediments to Plaintiff's ability to work.

However, her treating physician, likely an orthopaedist or at the least an internist, and a person who has treated Plaintiff for her low back and hip pain for some time, says that Plaintiff's experience of pain is either adding to her depression or vice versa. Dr. Nuthakki's opinion is that Plaintiff is unable to sustain work because of chronic low back and hip pain, whether the result of osteoarthritis, diabetic neuropathy or esinophilinic granuloma or a combination of the three. That opinion is unrebutted. There is objective proof in the form of x-rays, which show the likely

17

source of pain and Plaintiff's daily chores, much of which is delegated to her daughter, do not contradict that fact or cause us to disbelieve Plaintiff's subjective reports of pain. The ALJ is entitled to his opinion that the delegation was more the result of a life style choice, but we believe this to be an inappropriate case for that conclusion.

Were the ALJ's formulation of the residual functional capacity assessment the sole problem here, we would recommend a remand. However, because substantial evidence demonstrates that Plaintiff will miss more than 4 days of work per month because of her impairments, we find the proof of disability to be strong and opposing evidence lacking in substance. A remand in this matter would merely involve the presentation of cumulative evidence and would serve no useful purpose. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Accordingly, this matter should be remanded for an award of benefits.

## IT IS THEREFORE RECOMMENDED THAT:

This case be REVERSED pursuant to Sentence Four of 42 U.S.C. § 405(g) consistent with this opinion and REMANDED for an award of benefits.

July 9, 2009

Timothy S. Hogan
United States Magistrate Judge

## NOTICE TO PARTIES REGARDING FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **fifteen (15) days** after being served with this Report and Recommendation. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation are based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).